IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID E. WADE,**

        **Plaintiff,**                              Case No. 2:21-cv-305
                                                      Judge Edmund A. Sargus, Jr.
      **v.**                                                    Magistrate Judge Chelsey M. Vascura

**FRANKLIN COUNTY
OHIO,** *et al.*,

        **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Franklin County, Ohio, Franklin County Sheriff, and Deputy Nicholas Bates (ECF No. 184) and the Plaintiff's Motion for Partial Summary Judgment (ECF No. 185). For the following reasons, the Court **GRANTS** Defendant's Motion and **DENIES AS MOOT** Plaintiff's Motion.

**I.**

The facts set out below are taken from the evidence of record before the Court. Plaintiff David Wade was incarcerated awaiting trial on promoting prostitution and gross sexual imposition charges. He was provided the opportunity to wear a Remotely Activated Custody Control System ("stun belt") at his criminal jury trail where he was representing himself in the Franklin County Court of Common Pleas. Pursuant to that choice, the judge in that case issued an order that required Plaintiff to wear the belt during the trial. With the stun belt hidden under his clothes, Plaintiff attended his trial without any visible restraints.

Franklin County Sheriff Deputy Nicholas Bates was in charge of operating the stun belt during the trial. Deputy Bates was certified to operate the device after going through specific training. The stun belt consists of a receiver, battery pack, and stun applicator which are strapped to the individual wearing the stun belt, as well as a separate remote transmitter, which is held by the deputy in charge of operating the stun belt. The transmitter delivers a shock of between 50,000 and 75,000 volts when the operator holds down two buttons on the transmitter. The stun lasts for 5-8 seconds.

Before Plaintiff's state court criminal trial, another Franklin County Deputy accompanied Plaintiff to a medical evaluation to be sure Plaintiff could safely wear the stun belt in the event it was used while on him. After the evaluation and the placement of the stun belt on Plaintiff, he was transferred to Deputy Bates, whose shift did not start until 9:00 a.m. At a recess during the trial, Deputy Bates went to the bathroom in the holding area behind the courtroom known as the "breezeway." Plaintiff remained in the courtroom at counsel table, supervised by other deputies. While he was in the bathroom, Deputy Bates accidentally dropped the stun belt transmitter into the toilet.

As soon as the transmitter fell into the toilet, Deputy Bates ran to the courtroom to determine if the belt had activated. Seeing that the stun belt had not activated, Deputy Bates returned to the bathroom with another deputy, Deputy Randall, to retrieve the transmitter. At this point the transmitter had been in the water for over two minutes. Deputy Bates is shown on camera in the breezeway with the other deputy making an obscene gesture and laughing. As Deputy Bates was drying the transmitter, about one minute after he removed it from the water, it malfunctioned, and the belt activated shocking Plaintiff.

Deputy Bates and Deputy Randall immediately ran into the courtroom to help Plaintiff. Deputy Bates placed his arm between the belt and Plaintiff in an attempt to stop the belt from shocking him, while they used knife to cut the belt off. Plaintiff was shocked for between two and three minutes causing extreme pain.

Plaintiff filed this action alleging federal claims under 42 U.S.C. § 1983 and state law claims of assault and battery and negligence. Defendants move for summary judgement on all these claims and Plaintiff moves for summary judgment on the negligence claim. Those motions are ripe for review.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983, which "provides a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States. To succeed on a § 1983 claim, a plaintiff must satisfy two elements: first, that he was deprived of a right secured by the Constitution or the laws of the United States; and second, the deprivation was caused by a person acting under color of state law. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001.

Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals from liability. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity protects state officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982) (citations omitted). Thus, "officers are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U. S. 658, 664

(2012)).  If either requirement is not met, qualified immunity shields the official from civil damages.  *Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, (2001)).

     **A.**     **Claims Against Deputy Bates**

There is no dispute that Deputy Bates accidentally dropped the stun belt transmitter in the toilet.  Plaintiff contends, however, that the constitutional violation occurred when Deputy Bates acted with deliberate indifference by choosing to leave the stun belt on Plaintiff after the transmitter was dropped in the toilet and the belt was not activated.

Plaintiff brings claims against Deputy Bates for deliberate indifference and excessive force under the Fourteenth Amendment.  A pretrial detainee can establish a Fourteenth Amendment violation for failure to protect by showing that, "a defendant officer . . . act[ed] intentionally in a manner that puts the [plaintiff] at substantial risk of harm, without taking reasonable steps to abate that risk, and by failing to do so actually cause the [plaintiff's] injuries."  *Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022) (quoting *Brawner v. Scott County*, 14 F. 4th 585, 596-97 (6th Cir. 2021)).  In *Westmoreland*, the Sixth Circuit clarified the standard in a failure-to-protect claim, explaining that a pretrial detainee must show the officer was more than merely negligent and instead the officer must have acted with "reckless disregard" in the face of "an unjustifiably high risk of harm."  *Id.*  As a matter of first impression, the court stated that "[o]ur Circuit has now explicitly taken the position that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly."  *Id*.

The standard for the "reckless disregard" in a pretrial detainee's failure-to-protect claim was set forth as follows:

5

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Westmoreland*, 29 F.4th at 729.

Defendant Deputy argues that "Plaintiff's failure-to-protect claim fails, because there is no evidence that Deputy Bates was deliberately indifferent, or that such indifference caused the accident." (Reply at 2, ECF No. 199.) Defendants contend that "[t]here are no facts to demonstrate that Deputy Bates made an intentional decision to place Plaintiff at a substantial risk of harm without taking reasonable steps in response." (Reply at 3, ECF No. 3.) Deputy Bates testified that he believed any danger of the device malfunctioning had passed by the time he retrieved the device to dry it off, after having already checked on Plaintiff. Thus, he concludes that "[t]he fact that his belief proved to be mistaken when the device self-activated several moments later does nothing to recharacterize Deputy Bates's conduct." *Id*.

Defendant is correct that there are no facts to demonstrate that Deputy Bates made an intentional decision to place Plaintiff at a substantial risk of harm without taking reasonable steps in response. Under the *Westmoreland* test, however, the Court views Deputy Bates' conduct through the lens of a reasonable deputy in his position. And, even though the focus is on an objective showing as opposed to subjective, the result is the same. That is, even when viewing the fact in the light most favorable to Plaintiff and making all reasonable inferences in his favor, there is no issue of fact as to whether Deputy Bates' actions were anything more than negligent.

The Supreme Court has consistently held that "liability for negligently inflicted harm is

6

categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) ("Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim."). It is simply not unreasonable, let alone reckless, for Deputy Bates to determine that there was no substantial risk that the stun belt would spontaneously activate several minutes after the transmitter was exposed to water when it had not activated upon the initial exposure to submersion in water.

Both sides agree that there is no evidence of any similar incident involving a malfunctioning stun belt. Further, while the training materials caution against getting the device wet, they do not caution against the belt activating from a transmitter contacting water. The warning in the training material suggests that if the device gets wet, the operator might be harmed or that the device itself may be damaged or become inoperable, not that the device will spontaneously activate.

The Court further agrees with Defendants that, even if Plaintiff could raise a genuine issue of material fact as to whether Deputy Bates acted with deliberate indifference, there is no basis in the record to suggest that this indifference was the proximate cause of Plaintiff's injury. The parties do not dispute that the device malfunctioned and activated on its own. There is no evidence in the record that could raise an issue of fact as to whether the malfunction was foreseeable.

Consequently, Deputy Bates is entitled to qualified immunity because no reasonable jury could find that he violated Plaintiff's constitutional rights.

### B. Claims Against Franklin County Sheriff[1]

Governmental entities are liable for civil rights violations if it arises from custom or policy. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). In the case *sub judice*, no reasonable jury could find that there was an underlying constitutional violation. Thus, there is also no *Monell* liability.

### C. State Law Claims

Plaintiff moves for partial summary judgment on the state law claim of negligence. A district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction. "If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir. 2009). In this case, the Court has determined that Plaintiff's federal claims do not survive Defendants' Motion for Summary Judgment. The values of economy, convenience, fairness, and comity combine to make it appropriate for a state court to exercise its jurisdiction over these allegations. *See Mine Workers v. Gibbs*, 383 U.S. 715, 726–727 (1966). Additionally, the parties are all citizens of Ohio.

Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state claims, and dismisses them without prejudice, pursuant to the provisions of 28 U.S.C. § 1367(c)(3). Plaintiff's Motion for Partial Summary Judgment is, therefore, rendered moot.

---

[1] The Court accepts Plaintiff's claims as filed against the Franklin County Sheriff in his official capacity, which is clearly the substance of his pleadings.

## IV.

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 184), **DENIES AS MOOT** Plaintiff's Motion for Partial Summary Judgment (ECF No. 185) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's state law claims.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**IT IS SO ORDERED.**

**9/28/2023**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                             **EDMUND A. SARGUS, JR.**
                                                             **UNITED STATES DISTRICT JUDGE**